UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DEBORAH HONEYCUTT-JEFFERS,    )
    )
     Plaintiff,    )
    )
    )
v.    )    No. 3:10-CV-528
    )    (VARLAN/SHIRLEY)
    )
MICHAEL J. ASTRUE,    )
Commissioner of Social Security,    )
    )
     Defendant.    )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the
Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation
regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and
Memorandum in Support [Docs. 13 and 14] and Defendant's Motion for Summary Judgment and
Memorandum in Support [Docs. 17 and 18]. Plaintiff Deborah Honeycutt-Jeffers seeks judicial
review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the
Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On January 7, 2007, the Plaintiff filed an application for a period of disability, disability
insurance benefits, and/or supplemental security income, claiming a period of disability which
began Decemeber 1, 2006. [Tr. 262]. After her application was denied initially and also denied
upon reconsideration, the Plaintiff requested a hearing. On February 24, 2009, a hearing was
held before an ALJ to review determination of Plaintiff's claim. [Tr. 50-81]. On April 16, 2009,
the ALJ found that the Plaintiff was not disabled.

The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.     ALJ FINDINGS

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2008.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 1, 2006 through her date last insured of December 31, 2008 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: left shoulder rotator cuff partial thickness interstitial tear; borderline intellectual functioning; possible cognitive disorder; learning disorder; depressive disorder; and personality disorder (20 CFR 404.1521 *et seq.*).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could not have performed work where speed was essential and could not have performed complex or detailed work.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 7, 1959 and was 49 years old, which is defined as a younger individual age 18-49, on the date last

2

insured (20 CFR 404.1563).

8. The claimant is illiterate but is able to communicate in English (20 CFR 404.1563).

9. Transferability of job skills in not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 1, 2006, the alleged onset date, through December 31, 2008, the date last insured (20 CFR 404.1520(g)).

[Tr. 41-49]

## II.     DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a

3

disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S.

4

137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence,

5

nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    POSITIONS OF THE PARTIES

The Plaintiff has presented her position as containing six distinct arguments. The Court has read and considered each of these, and the Court finds that they are best classified as two overarching allegations of error. First, the Plaintiff argues that the ALJ erred in concluding that

6

the Plaintiff did not satisfy the criteria of Listing 12.05C.[1]  Second, the Plaintiff argues that the ALJ erred in weighing and considering the medical evidence in the record.[2]

The Commissioner responds that the ALJ's finding that the Plaintiff failed to prove she met or equaled any listing section, including Subsection C of Listing 12.05, is supported by substantial evidence.  [Doc. 18 at 6].  The Commissioner maintains that the Plaintiff's arguments about the ALJ's weighing of the evidence are without merit.  [Doc. 18 at 11].  Overall, the Commissioner argues that substantial evidence supports the ALJ's residual functional capacity finding and also supports the ALJ's ultimate finding that the Plaintiff could perform jobs existing in significant numbers in the economy.  [Doc. 18 at 18-19].

## V.     ANALYSIS

As stated above, the Plaintiff's allegations of error can be distilled into two overarching arguments: first, that the ALJ erred in his evaluation of Subsection C of Listing 12.05, and second, that the ALJ erred in weighing and considering the medical evidence in the record.  The Court will address each of these arguments in turn.

## A.     Section C of Listing 12.05

The Plaintiff contends that she did and does suffer from mental retardation as it is defined

---

[1] Arguments (A) and (B) from the Plaintiff's Memorandum fall in this category: Argument A- "The ALJ erred in not finding that the Claimant met the first and second requirements of Listing 12.05C" and Argument B- "The ALJ erred in his evaluation of the Plaintiff's past relevant work, both as it was classified by the Vocational Expert, and as it pertained to the Plaintiff's argument that she met Listing 12.05C." [Doc. 14 at 2-3].
[2] Arguments (C), (D), (E), and (F) fall within this category: Argument (C)- "The ALJ committed reversible error in failing to address medical opinions contained in the record."; Argument (D)- "ALJ Williams erroneously relied on the opinion of non-examining physicians regarding impairment severity, when such opinion was not based on a review of the entire record in this case."; Argument (E)- "ALJ Williams erred in his weighing of the medical evidence."; and Argument (F)- "ALJ Williams erred by providing conflicting statements in regards to the weight given to various medical sources."  [Doc. 14 at 3].

7

by the Listing of Impairments found in 20 C.F.R. 404, Subpart P, Appendix 1, Part A, Listing

12.05C.  Listing 12.05C provides in relevant part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
>> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Normally, a claimant can establish disability by demonstrating all of the medical findings listed for an impairment. 20 C.F.R. § 404.1525(c)(3).  "If a claimant does not have one of the findings, however, [he or] she can present evidence of some medical equivalent to that finding." Bailey v. Comm. Soc. Sec., No. 09-6389 (6th Cir. Mar. 11, 2011) (citing §§ 404.1525 & 404.1526).  To demonstrate such a medical equivalent, the claimant must present "medical findings equal in severity to all the criteria for the one most similar listed impairment."  Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original).

Thus, to be disabled under Listing 12.05C, the Plaintiff must establish that: (1) her valid verbal, performance, or full scale IQ score was between 60 and 70; (2) she had significantly subaverage general intellectual functioning with deficits in adaptive functioning, which manifested prior to age 22; and (3) she has a mental or physical impairment imposing an additional and significant work-related limitation.

8

In evaluating Plaintiff's allegation of disability pursuant to Subsection C of Listing 12.05, the ALJ stated:

> The claimant's attorney alleged that the claimant's impairments met the requirements of listing 12.05(C), which provides that a claimant is disabled by mental retardation (significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period) manifested by a valid verbal, performance, or full-scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. However, the undersigned finds that the claimant's scores on IQ testing performed in June 2007, which were within the borderline range of intellectual functioning, to be more persuasive than the scores that the claimant obtained on IQ testing performed on February 2007. The claimant's reported history of special education through the twelfth grade, and IQ scores on the February 2007 testing were in keeping with the results of Wide Range Achievement Test – Third Edition, which indicated that the claimant read on a second grade level and performed arithmetic on the fourth grade level. However, her work history, which includes semiskilled past relevant work as well as more than 17 years as a machine operator until December 2006, indicates a higher level of adaptive functioning than indicated by the February 2007 IQ scores, and is more in keeping with the results of the June 2007 IQ testing, which indicated that her intellectual functioning was in the borderline range. Thus, the claimant's impairment(s) do not meet the first requirement of listing 12.05(C) (Exhibits 3F, 11F).

[Tr. 42].

Though the ALJ's reference to the "first requirement" is slightly hard to follow, when examined in the context of his discussion, it appears that the ALJ based his determination that the Plaintiff did not fulfill Subsection C of Listing 12.05 on the fact that the Plaintiff had not demonstrated requisite IQ scores.

9

The Plaintiff argues that the ALJ should have relied upon the lower scores. In support of this argument, the Plaintiff cites the Court to Listing 12.00, Subpart (D)(6)(c), which explains, "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." Subpart (D)(6)(c) does not indicate that the ALJ must use the lowest score *ever* recorded for the claimant on different dates, just that the ALJ is to use the lowest score among the three traditionally produced on the same date. Subsection 12.00(D)(6)(a) further explains, "[S]ince the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."

In this case, the ALJ relied on this contextual information and comments in determining that the scores taken in June 2007 were more reliable. In the February 2007 report, which yielded scores of 66, 75, and 67, Patricia Maffeo, Ph.D., noted that the Plaintiff "seemed to be trying her best" and found that her scores were valid, but notwithstanding, Dr. Maffeo noted that the Plaintiff gave up before her allotted time on some tasks. [Tr. 445]. In notes accompanying the June 2007 scores of 83, 85, and 77, Shawn David Hassler, M.A., noted that on some test items the Plaintiff "almost immediately gave an 'I don't know' answer . . . without taking the time to consider them fully or to even hazard a 'guess' to a possible right answer." [Tr. 526]. Mr. Hassler noted that, while the scores indicated were not an "overriding underestimate" of Plaintiff's abilities, she might obtain higher scores "under truly optimal circumstances." [Tr. 526].

10

Given the comments from the examiners and the evidence of Plaintiff's ability to function that is found in the record, the Court finds that the ALJ's decision not to rely upon the 66 and 67 scores found in the February 2007 examination and find that the Plaintiff did not fulfill the IQ score criteria of Subsection C of Listing 12.05 is supported by substantial evidence.

Moreover, even if the Court were to assume that the IQ score requirement of Subsection C were fulfilled, the Court finds that the ALJ's conclusion that the Plaintiff did not have significantly subaverage general intellectual functioning with deficits in adaptive functioning, is supported by substantial evidence. The Plaintiff was enrolled in special education classes at different times in her primary and secondary education, but she graduated from high school. As the ALJ noted, she was also able to work for 17 years in a factory.

The Plaintiff has listed a further, related allegation that the ALJ erred in his evaluation of the Plaintiff's past relevant work "as it pertained to the Plaintiff's argument that she met Listing 12.05C." [Doc. 14 at 3]. The Plaintiff takes issue with the fact that the ALJ noted the Plaintiff's experience in semi-skilled work, such as a forklift driver, in his decision, because the Plaintiff's tenure at this position was short. [Doc. 14 at 25]. The Plaintiff also argues that her almost two decades of unskilled work should not be considered in evaluating her intellectual functioning and adaptive ability. The Plaintiff, however, has not cited the Court to any cases or regulations directing that the ALJ not consider such evidence.

Contrary to the Plaintiff's position, the ability to adapt to the workplace for a long period has been recognized as weighing against finding deficits in adaptive functioning and/or mental retardation. See West v. Comm'r Social Sec., 240 Fed. App'x 692, 698 (6th Cir. 2007)(finding

11

substantial evidence supported the ALJ's conclusion that the claimant did not experience deficiencies in adaptive functioning, where claimant held a long-term, full-time position with his city, "continued to drive a garbage truck on a part-time basis, to care for his daily needs, to pay bills, to shop for groceries, to interact with friends and families, and to engage in numerous other daily activities"); see also Carmack v. Barnhart, 147 Fed. App'x 557, 560-561 (6th Cir. 2005) (finding ALJ's determination that claimant did not have sufficient adaptive function deficiencies where she owned a tanning salon which required her to keep the books, manage the business, use the adding machine, and take appointments and was employed as a court reporter).

Based upon the foregoing, the Court finds that the Plaintiff's allegations that the ALJ erred in determining that the Plaintiff did not fulfill the criteria for finding disability contained in Listing 12.05 are not well-taken.


B.     **The Medical Evidence in the Record**

The Plaintiff argues that the ALJ did not properly consider the medical records from treatment with Glenn Peterson, M.D., [Doc. 14 at 27], and the medical records from treatment at Summit Health-Fountain City Family Physicians, [Doc. 14 at 28].  The Plaintiff also argues that the ALJ erred by giving great weight to Andrew J. Phay, Ph.D., a non-examining psychological consultant [Tr. 455-471], and William L. Downey, M.D., a non-examining physician who evaluated the Plaintiff's shoulder and her physical residual functional capacity [Tr. 481-88].  The Plaintiff maintains that the ALJ should have afforded additional weight to medical personnel who examined the Plaintiff, such as, Shawn Hassler, M.A., Patricia Maffeo, Ph.D., and Becky Brown, a vocational evaluator.

The Commissioner disputes all of these allegations of error and argues that substantial evidence supports the ALJ's weighing of the evidence.

Initially, the Court would note that the ALJ discussed the Plaintiff's treatment with each of the physicians and other medical personnel identified above. The ALJ did not identify each source by name, but he did, at least, identify all by exhibit number, [see, e.g. Tr. 31 (discussing psychological findings of Dr. Peterson as identified by Exhibit No. 10F)]. Many of the sources were discussed by name. To the extent Plaintiff contends that each source must be identified by name, [Doc. 14 at 28], the Plaintiff has cited no authority in support of this argument to the Court, and the Court's own research has yielded only case law to the contrary, see Monateri v. Comm'r of Soc. Sec., 2011 WL 3510226, at *10 (6th Cir. 2011) ("Assuming that Dr. Bertschinger was indeed a treating physician, we find that the ALJ's failure to specifically mention Dr. Bertschinger by name does not constitute a lack of substantial evidence.")

1.    *Peninsula Behavioral Health*

Turning to the Plaintiff's specific allegations, the Court will first address Dr. Peterson. The Plaintiff makes a perfunctory allegation that Dr. Peterson was a treating physician, simply describing him as "treating physician Dr. Peterson." [Doc. 14 at 27]. Assuming for the sake of argument that Dr. Peterson is a treating physician, the Court finds that the ALJ did not err in his evaluation of the Plaintiff's treatment with Dr. Peterson or Dr. Peterson's opinion about the Plaintiff's condition. Consistent with Dr. Peterson's diagnosis, the ALJ found that the Plaintiff had a learning disorder, a depressive disorder, and a possible cognitive disorder. [Tr. 41, 507, 509]. The ALJ noted that the Plaintiff began mental health treatment, felt better while taking

13

psychotropic medication, and sought refills, [Tr. 31], all of which is consistent with the evidence in the record, [see, e.g. Tr. 506].

The Plaintiff directs the Court to a Multidisciplinary Assessment in which Mona Ford, LPN, who worked at Peninsula Behavioral Health with Dr. Peterson, assigned the Plaintiff a GAF assessment of 50, citing problems with the Plaintiff's support group, problems with her social environment, and her occupational and economic problems. [Tr. 518]. The Plaintiff cites the Court to the Diagnostic and Statistical Manual for Mental Health-IV for the significance of this score, but the Plaintiff does not demonstrate how this score undermines the residual functional capacity determination. The Plaintiff has not demonstrated that the ALJ was obligated to further discuss or consider this score and the case law on point indicates that the ALJ did not err in his treatment of the GAF score. See White v. Comm'r of Soc. Sec., 312 Fed. App'x 779, 787 (6th Cir. 2009) (finding that ALJ was not required to include GAF finding in the residual functional capacity finding where the physician did not note any limitations caused by the mental impairment); see also Howard v. Comm'r of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("[A] GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.")

The Court, accordingly, finds that the ALJ did not err in his treatment of the medical records and opinions regarding treatment with Dr. Robertson and Ms. Ford at Peninsula Behavioral Health.

2.  *Fountain City Family Physicians*

The Plaintiff next takes issue with the ALJ's discussion of the medical records from

14

"Summit Physical Therapy [S]ervices."  [Doc. 14 at 28].   However, she cites the Court to

documentation from her treatment with Brian Mosrie, M.D. at Fountain City Family Physicians,

a division of Summit Medical Group, and from various referrals for other medical services made

by Dr. Mosrie.  The only medical record from "Summit Physical Therapy Services" is a single-

page check-list with an unidentifiable signature of a physical therapist.  [Tr. 562]. The applicable

regulations do not list physical therapists as acceptable medical sources; they are instead

considered "other medical sources".  <u>See</u> 20 C.F.R. § 404.1513(a).

This one page check-list does not demonstrate a longitudinal treatment of the Plaintiff,

and there is no evidence that it was endorsed by or constitutes a finding of Dr. Mosrie, a treating

source.  <u>See</u> 20 C.F.R. § 404.1527(d)(2).  In contrast to the physical therapist's indication that the

Plaintiff had a limited range of motion, a limited ability to reach, and other physical limitations,

Dr. Mosrie's notes did not include any physical limitations.

The Plaintiff also notes that Dr. Mosrie referred the Plaintiff for consultative evaluations

with W. Scott Bridges, M.D., and Daniel A. Baker, M.D.  The Plaintiff complains that the ALJ

did not discuss these consultations extensively enough in his decision.  The Court finds that the

ALJ appropriately discussed Dr. Bridges's findings, which included a normal CT scan despite

Plaintiff's subjective complaints of memory loss, [Tr. 564].  Dr. Baker's MRI findings were

passed on to Dr. Mosrie who addressed them in treatment notes from a visit on August 13, 2008,

[Tr. 563].  The ALJ described the MRI in detail and also noted the Plaintiff's treatment with Dr.

Mosrie.  [Tr. 45].  The Court finds no error on this point.

3.    *Non-Examining Physicians*

Turning to the ALJ's treatment of the opinions of the non-examining physicians, the

15

Court finds that the ALJ did not err in affording great weight to the findings of Dr. Phay and Dr. Downey.  Dr. Phay found that the Plaintiff could: remember locations and work-like procedures, understand and remember simple tasks, perform simple tasks, maintain concentration and perform routine daily tasks without substantial difficulty, complete a normal work week, sustain an ordinary work routine, interact with the public and peers, maintain basic standards of neatness and cleanliness, respond to hazards and changes in the work place, travel to unfamiliar places, and set and pursue realistic work goals without substantial difficulties.  [Tr. 471].  The ALJ found this opinion to be consistent with Plaintiff's lack of mental treatment prior to March 2008 and consistent with her reported daily activities.  [Tr. 47].

The Plaintiff argues that Dr. Phay did not have the benefit of reviewing later evaluations — for example, those of Ms. Brown and Ms. Hughes, two vocational evaluators, and the report of Mr. Hassler.  The Plaintiff also notes that Dr. Phay would not have seen Dr. Peterson's records.  The Court finds that these opinions do not contain limitations that would change Dr. Phay's opinion.  The ALJ did not consider Dr. Phay's opinion in a vacuum.  He instead considered the record as a whole, including later evidence, and concluded that Dr. Phay's opinion was entitled to great weight.

William L. Downey, M.D., reviewed the Plaintiff's medical history and issued an opinion regarding her residual functional capacity on May 21, 2007.  [Tr. 481-88].  Dr. Downey found the Plaintiff's complaints of shoulder pain were partially credible, [Tr. 487], and he opined that the Plaintiff could perform medium work, [see Tr. 482].  The ALJ found that Dr. Downey's opinion was consistent with the "overall evidence of record, including examination findings, diagnoses, treatment and prescribed medications."  [Tr. 31].

16

The Plaintiff again takes issue with the fact that Dr. Downey could not view the records produced after his report including vocational rehabilitation reports. The Court again finds this argument unpersuasive. The ALJ was aware that some medical records, which were included in evidence for his review, were not available to Dr. Downey during his review. The fact that these records were made available later does not preclude the ALJ from affording great weight to the opinion. Much the evidence cited by the Plaintiff [Tr. 553-87], is unrelated to the shoulder issues evaluated by Dr. Downey and is instead evidence relating to preventive medicine, like the Plaintiff's mammogram [Tr. 553], and Plaintiff's occasional medical issues, like her staple removal following a fall, [Tr. 561]. The later-produced evidence that does relate to Plaintiff's shoulder, [see, e.g., Tr. 563-65], was discussed by the ALJ in his decision, [Tr. 45 (discussing MRI ordered by Dr. Mosrie)].

4.      *Shawn Hassler, M.A.*

The Plaintiff also argues that the ALJ erred in the weight he afforded to Shawn Hassler, M.A. [Doc. 14 at 30-31]. The ALJ stated in his opinion that he afforded no weight to the opinion of Mr. Hassler because Mr. Hassler relied heavily upon the Plaintiff's self-reporting. [Tr. 45]. The Plaintiff complains that the decision to afford Mr. Hassler no weight was an error. The Plaintiff also argues that affording no weight to portions of Mr. Hassler's opinion, while relying on his findings as to the Plaintiff's IQ score, was an error. [Doc. 14 at 31].

The Court agrees that the ALJ's explanation for his treatment of Mr. Hassler's evaluation is, at a minimum, confusing. In his determination, the ALJ did find that the scores from the IQ testing performed by Mr. Hassler were more persuasive [Tr. 42] than the IQ testing performed by

17

Dr. Maffeo. However, the ALJ also cited a number of findings by Mr. Hassler and stated, "No weight is given to [Mr. Hassler's] evaluation." [Tr. 45].

These findings taken together, however, are not mutually exclusive. The IQ testing [Tr. 526-27], appears to be the only portion of Mr. Hassler's evaluation that did not rely, exclusively, on the Plaintiffs' self-reporting. The ALJ's statement that no weight had been afforded to the evaluation was an overstatement. His actual evaluation could have been more appropriately described as affording weight to only the portion of the evaluation that relied upon objective testing, *i.e.* the IQ testing. However, the Court finds that this misstatement did not constitute an error necessitating remand or reversal.

5.   *James Eric Lashley, M.D.*

The Plaintiff makes a similar argument with regard to the weight afforded to the opinion of James Eric Lashley, M.D. [Doc. 14 at 31]. The Court finds, however, that the ALJ discounted only Dr. Lashey's opinion regarding Plaintiff's inability to care no more than twenty-five pounds, [see Tr. 46]. In support of discounting this portion of Dr. Lashey's opinion, the ALJ noted that the limitation on carrying twenty-five pounds was "inconsistent with Dr. Lashey's own findings on examination of the claimant, which were essentially unremarkable, including full range of motion of both shoulders; full muscle strength; and 'very good' muscle tone." [Tr. 46]. A review of Dr. Lashey's opinion reinforces this finding, as he found Plaintiff had "great" muscle tone and "excellent range of motion with the ability to lift both shoulders." [Tr. 450].

Notwithstanding, the ALJ limited the Plaintiff to light work – a residual function capacity finding, which effectively incorporates Dr. Lashey's finding that the Plaintiff would be limited to carrying twenty-five pounds or less on a regular basis. See 20 C.F.R. § 404.1567(b) ("Light

18

work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. ") Thus, the ALJ's decision to afford little weight to Dr. Lashley's finding was inconsequential because the ALJ ultimately incorporated a more restrictive weight-lifting limitation into his residual functional capacity determination.

6.      *Becky Brown*

The Plaintiff complains that the ALJ did not afford sufficient weight to Becky Brown, a vocational examiner. The Court finds that Ms. Brown's evaluation is entitled to little weight in this case as it makes the type of disability determinations that are reserved for the Commissioner. If the ALJ were to adopt Ms. Brown's finding that the Plaintiff "is unable to work and is not an appropriate candidate for retraining," he would be effectively ceding his role to a state vocational examiner. It would not be appropriate to do so. [Tr. 541]. The Court finds that the ALJ did not err in affording no weight to this opinion.

The Court finds that the ALJ did not err on this point.

7.      *Patricia Maffeo, Ph.D.*

Finally, the Plaintiff argues that the ALJ "dismissed" the opinions of Dr. Maffeo, a psychologist who examined the Plaintiff as part of her state agency evaluation, [Tr. 442-447]. As with Mr. Hassler, the ALJ found that Dr. Maffeo's evaluation relied too heavily upon the Plaintiff's subjective complaint, but he nonetheless afforded some weight to the opinion, [Tr. 47]. The Plaintiff argues that Dr. Maffeo's report is "actually very consistent with [her] findings

19

regarding [] the Plaintiff." [Doc. 14 at 31]. The Plaintiff does not, however, cite the Court to any portions of the record or Dr. Maffeo's report that is consistent with the evidence in the record. Moreover, the Plaintiff has not contradicted the ALJ's finding that the opinion should be discounted by demonstrating that Dr. Maffeo's opinion does not rely on the Plaintiff's subjective complaints.

Thus, having no citations from the Plaintiff to undermine the ALJ's finding on this point and after reviewing Dr. Maffeo's report, the Court finds that there is substantial evidence to support the ALJ's conclusion that Dr. Maffeo's opinion relies heavily on Plaintiff's subjective reporting and is entitled to little weight as a result. [Tr. 442-45].

Accordingly, the Court finds that the ALJ did not err on this point.

## VI.    CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work, with certain enumerated limitations. Substantial evidence supports the ALJ's findings and conclusions.   Therefore, it is hereby **RECOMMENDED**[3] that Plaintiff's Motion For Summary Judgment **[Doc. 13]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 17]** be **GRANTED**.

Respectfully submitted,

___ s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Fed. R. Civ. P. 72(b)(2).  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).